IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRENDA KIRBY and** <br> **GARY KIRBY,** <br><br> Plaintiffs, <br><br> v. <br><br> **STATE FARM LLOYDS', EVAN** <br> **KINGERY, and KIMBERLY SCHOLES,** <br><br> Defendants. | § § § § § § § § § § § § | Civil Action No. **3:21-CV-3120-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs Brenda and Gary Kirby's ("Plaintiffs") Motion to Remand and Brief in Support ("Motion to Remand") (Doc. 10) in which they request that the court remand the case to state court for lack of subject matter jurisdiction because there is not complete diversity of citizenship between the parties. Also before the court is Defendant State Farm Lloyds' Motion to Enforce Settlement ("Motion to Enforce") (Doc. 14), filed on August 24, 2022, requesting the court dismiss this action with prejudice pursuant to a Settlement Agreement between the parties. For the reasons that follow, the court first determines that it has diversity jurisdiction over this case and **denies** Plaintiffs' Motion to Remand (Doc. 10). Having found jurisdiction, the court determines that the parties' Settlement Agreement is binding and enforceable. The court, therefore, **grants** Defendant's Motion to Enforce Settlement (Doc. 14), and **dismisses with prejudice** this action and all claims between the parties in light of their Settlement Agreement.

**I.   Factual and Procedural Background**

Plaintiffs initiated this action against Defendants State Farm Lloyds' ("State Farm"), Evan Kingery, and Kimberly Scholes (collectively, "Defendants") in Texas state court. Doc. 1 State

**Memorandum Opinion and Order – Page 1**

Farm timely removed on December 14, 2021. *Id.* In their Original Petition, Plaintiffs allege that State Farm and its adjusters, Kingery and Scholes, failed to fully compensate them for damage to their property located in Garland, Texas ("Property"), insured by State Farm insurance policy number 43G7093S2. Doc. 1-5 at 5. In pleading jurisdiction, Plaintiffs assert that both Kingery and Scholes engaged in business in Texas, making them Texas citizens for the purpose of this action. *Id.* at 4. They contend that "Kingery and Scholes failed to perform a thorough investigation of the claim," misrepresenting the extent of the damage to Plaintiffs' Property by failing to include details of the damage to the flooring and dwelling interior resulting from a burst pipe. *Id.* at 5-6. They further contend that State Farm failed to provide full coverage to which Plaintiffs are entitled, undervaluing the damage at $49,449.40. *Id.* at 5.

Plaintiffs bring allegations for breach of contract, breach of the duty of good faith and fair dealing, and noncompliance with the Texas Insurance Code pursuant to Section 541.060(a) for unfair settlement practices, and Sections 542.055–.058 for failure to issue prompt payment of claims. *Id.* at 7-9. As a result of these alleged violations, Plaintiffs request compensation for the damages suffered to the Property, court costs, and attorney's fees. *Id.* at 18-19.

Soon after State Farm removed this action, the parties commenced settlement discussions. On January 13, 2022, its attorney, Rhonda Thompson, e-mailed Plaintiffs' attorney, Andrew A. Woellner, advising him that she had "some settlement authority" and would like to try to settle the action. Doc. 14 at 9. The discussion occurred over the phone and was memorialized in an e-mail from Arielle Comer, counsel for State Farm, on January 18, 2022, detailing all previous policy payments made to Plaintiffs and adding in pertinent part the proposed terms of the parties' Settlement Agreement as follows:

**Memorandum Opinion and Order – Page 2**

> The [redacted amount] we discussed would be new money, in addition to payments already made. The offer would be a full and final settlement of all [Plaintiffs'] claims includes [sic] all damages and costs incurred for any and all causes of action against our client, including attorneys' fees, interest, court costs, and expenses. Lastly, it includes any amounts of **recoverable depreciation** that may or may not be outstanding.

Doc. 14 at 11 (emphasis added). A few days later, Ms. Comer e-mailed Zachary Harvey, counsel for Plaintiffs:

> I just wanted to send a confirmatory e[-]mail that we are in agreement to settle Kirby v. State Farm Lloyds for [redacted amount] new money. I will start working on the draft of the settlement agreement and will make sure to include the verbiage we discussed. In the meantime, I'm going to draft a notice of settlement to the court, please let me know if I have your permission to sign.

Doc. 14 at 14. The parties then filed a Joint Notice of Dismissal (Doc. 7) on January 21, 2022, and the court administratively closed the case on January 23, 2022 (Doc. 8).

In the days that followed, counsel for both parties worked to effect the settlement payment through the exchange of appropriate tax forms and check details. Doc. 14 at 19-20. At some point after receiving the payment checks, however, State Farm asserts that Plaintiffs rejected the settlement offer, and Plaintiffs' counsel "called Defendant's counsel to inform [them] that unless Defendants are willing to pay 'recoverable depreciation,' they will not be signing the settlement agreement." *Id*. at 3-4. State Farm then, on March 21, 2022, filed a first Motion to Enforce Settlement Agreement (Doc. 9), to which Plaintiffs responded (Doc. 11). Upon State Farm's motion, the court reopened the case on August 25, 2022 (Doc. 15). In response to State Farm's second Motion to Enforce Settlement Agreement (Doc. 14), the court denied as moot the first motion. Docs. 15, 17. The court also entered an order clarifying that as the case was now reopened, Plaintiffs' Motion to Remand, which they filed when the case was closed, was now live for response and review. Doc. 16. State Farm filed a response opposing remand on September 15,

**Memorandum Opinion and Order – Page 3**

2022. Accordingly, the court determines that the pending Motion to Remand and Motion to Enforce Settlement are now ripe for determination and ruling.

## II.     Plaintiffs' Motion to Remand[1]

### A. Improper Joinder Standard

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). In *Smallwood,* the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id.* at 571 n.1. Accordingly, the court uses the term "improper joinder" in this opinion. As the party wishing to invoke federal jurisdiction by alleging improper joinder, Defendants have the burden to establish that Plaintiffs joined Evan Kingery and Kimberly Scholes to defeat federal jurisdiction. *Id.* at 575. The court is to resolve "any doubt as to the propriety of removal" in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation and quotation marks omitted).

Unless Congress expressly provides otherwise, a defendant may remove a state court civil action to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over civil actions in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Otherwise stated, the statute requires complete

---

[1] Plaintiffs' Motion to Remand is based on an alleged lack of diversity of citizenship between the parties. The amount in controversy is not in play, as a plain reading of Plaintiffs' Original Petition, which includes several causes of action, requests for compensatory and punitive damages, and attorneys' fees, leads the court to reasonably infer that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

**Memorandum Opinion and Order – Page 4**

diversity of citizenship; that is, a district court cannot exercise subject matter jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). The citizenship of a party that is improperly joined must be disregarded in determining whether diversity of citizenship exists. *Johnson v. Heublein*, 227 F.3d 236, 240 (5th Cir. 2000).

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud on the part of Plaintiffs, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis omitted)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must

**Memorandum Opinion and Order – Page 5**

be reasonable, not merely theoretical." *Id.* If there is a reasonable possibility that a plaintiff can recover on any of his or her claims, there is no improper joinder, and the case must be remanded. *Smallwood*, 385 F.3d at 575. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted). To determine whether a party was improperly joined, the court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). On the other hand, if there is no reasonable possibility for predicting liability against the non-diverse defendant, improper joinder exists, and the action remains in federal court.

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant;" or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the [notice of] removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). A court may not look to post-removal filings or pleadings to determine the issue of improper joinder. *Griggs v. State Farm Lloyds*, 181 F.3d at 700 (citation omitted). Limiting the determination of questions regarding removal jurisdiction to the claims set forth in the state pleadings at the time of removal ensures finality and early resolution

**Memorandum Opinion and Order – Page 6**

of the jurisdictional issue, both of which reduce expense and delay to the parties and court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 n.16 (5th Cir. 1995).

In *International Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, the Fifth Circuit addressed whether the state or federal pleadings standard applies to the issue of improper joinder, holding that a federal court must apply the federal pleading standard. 818 F.3d 193, 208 (5th Cir. 2016). The federal pleading standard is that used for addressing a motion under Federal Rule of Civil Procedure 12(b)(6).

### B.  Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not

allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

The ultimate question in a Rule 12(b)(6) determination is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### C. Discussion

The sole issue presented in the Motion to Remand is whether Defendants Kingery and Scholes were properly joined in this action. Defendants contend that Plaintiffs fail to state a specific claim against Kingery and Scholes under Texas law. In the Motion to Remand, Plaintiffs assert that the Texas Insurance Code allows Kingery and Scholes to be held liable in their personal capacities for unfair and deceptive settlement practices in their adjustment of the claim, and further, that the allegations in the Original Petition are sufficient to show a reasonable possibility of recovery by Plaintiffs against them. If so, these Defendants were properly joined, and this court must grant Plaintiffs' Motion to Remand for lack of diversity jurisdiction. If the court finds a reasonable basis to predict that Plaintiffs can potentially recover on one of the causes of action asserted against these Defendants, the court must remand the entire case. *See Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) ("Although our fraudulent joinder decisions have never made the issue entirely pellucid, § 1441's holistic approach mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court.").

The Texas Legislature enacted Chapter 541 of the Texas Insurance Code "to regulate trade practices in the business of insurance" by prohibiting "unfair methods of competition or unfair or deceptive acts or practices." Tex. Ins. Code § 541.001. In Texas, a "person may not engage . . . in a trade practice that is defined in [Chapter 541] as or determined under [Chapter 541] to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." *Id.* § 541.003. The Texas Insurance Code permits any person "who sustains actual damages" to "bring an action against another person for those damages caused by the other person engaging in . . . an unfair or deceptive act or practice in the business of insurance." *Id.* § 541.151(1).

**Memorandum Opinion and Order – Page 9**

Subchapter B defines "unfair methods of competition and unfair or deceptive acts or practices." *See id*. §§ 541.051–.061. An "unfair or deceptive act or practice in the business of insurance" includes engaging in "unfair settlement practices with respect to a claim by an insured that include:

> (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
> (2) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of: (A) a claim with respect to which the insurer's liability has become clear;
> . . . .
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
> (4) failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder;
> . . . .
> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

*Id*. § 541.060(a)(1)-(4), (7).

A "person" for purpose of Chapter 541 is "an individual, corporation, association, partnership, . . . Lloyd's plan, . . . or other legal entity engaged in the business of insurance, including an agent, broker, or adjuster." *Id*. § 541.002(2). Accordingly, for Kingery and Scholes to qualify as "persons" and be subject to suit under Chapter 541 of the Texas Insurance Code, they must be "engaged in the business of insurance." *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex. 1998). Under Texas law, the "adjustment of claims and losses" qualifies as "the business of insurance," thus making an "adjuster" a "person" under the Insurance Code. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988); *see also Gasch v. Hartford Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007) (holding that an insurance adjuster who services a policy engages in the business of insurance and, therefore, could be held individually liable under the Texas Insurance Code).

Having concluded that Kingery and Scholes can be held liable under the Texas Insurance Code, the court now asks whether, applying the federal pleading standard, there is a reasonable basis to predict that Plaintiffs state a viable claim and might be able to recover under state law against these Defendants. *See Smallwood*, 385 F.3d at 573; *see also Dodson*, 951 F.2d at 42 (finding that, in making a determination regarding improper joinder, a court does not decide whether plaintiffs "will actually or even probably prevail on the merits, but looks only" for a reasonable possibility that plaintiffs may do so) (citations omitted) (cleaned up).

Plaintiffs allege that State Farm hired Kingery and Scholes to adjust the claim for the Property's flood damage. Doc. 1-5 at 10, 12. They contend that Kingery and Scholes failed to "conduct a reasonable inspection and investigation of Plaintiffs' damages," downplayed the severity of the damages to the Property's flooring and dwelling interior, failed to provide an adequate explanation for the allegedly inadequate claim compensation, and erroneously asserted that certain damages were not covered by the policy. *Id.* at 5, 11, 13. Plaintiffs fail to allege specific failures with respect to Kingery and Scholes but broadly allege that these Defendants "failed to offer Plaintiffs adequate compensation without any explanations," did not communicate about any future compensation, and because they did not properly inspect the Property, "failed to account for Plaintiffs' flooring damage." *Id.* at 11, 14. Plaintiffs further allege that Defendants' "unfair settlement practices, as described above, [] constitutes an unfair method of competition, and an unfair and deceptive act or practice in the business of insurance." *Id.* at 12, 15.

The Texas Supreme Court has "specifically held that '[t]he business of insurance includes the investigation and adjustment of claims and losses.'" *Roach v. Allstate Vehicle & Prop. Ins. Co.*, Civil Action No. 3:15-CV-3228-G, 2016 WL 795967 at *4 (N.D. Tex. Feb. 29, 2016) (Fish, J.) (citing *Vail*, 754 S.W.2d at 132); *see also Gasch*, 491 F.3d at 282 (collecting cases holding that

**Memorandum Opinion and Order – Page 11**

an insurance adjuster is subject to individual liability under Texas Insurance Code). Plaintiffs have adequately alleged that Kingery and Scholes were "adjuster[s]" engaged in the "business of insurance," and, therefore, are considered a "person" under the Texas Insurance Code. Tex. Ins. Code § 541.002; *Gasch*, 481 F.3d at 282. These allegations, however, fail to rise to the federal pleading standard as required by the Federal Rule of Civil Procedure 12(b)(6). *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Plaintiffs fail to set forth facts stating how these Defendants violated the cited provisions of § 541.060(a) and instead offer boilerplate assertions that merely repeat the statutory language. Aside from the statements showing that the missed damage resulted from a broken pipe that harmed the interior floors, Plaintiffs have not asserted facts as to a specific policy provision, incomplete statement or communication, or inadequate inspection. Such allegations are conclusory and cannot withstand scrutiny under Rule 12(b)(6).

Because Plaintiffs have not set forth sufficient factual allegations for the court to reasonably infer that Defendants Kingery and Scholes are liable for the misconduct alleged, they fail to meet the plausibility test required to state a claim under which relief can be granted against these Defendants under the Texas Insurance Code. The court, therefore, concludes that Kingery and Scholes were improperly joined as Defendants in this lawsuit. Accordingly, the court has jurisdiction over this action based on diversity jurisdiction and will disregard the citizenship of Kingery and Scholes. Having found diversity jurisdiction, the court now considers Defendants' Motion to Enforce Settlement.

### III.     Defendant's Motion to Enforce Settlement (Doc. 14)

In its Motion to Enforce, Defendants contend that the court should dismiss this action in light of the enforceable settlement reached by the parties on January 21, 2022. For support, State Farm submitted copies of the above referenced e-mail correspondence exchanged by counsel for

the parties on January 18, 21, 24, and February 2, 2022. Defendant contends that this correspondence clearly establishes the formation of a binding agreement to settle the claims asserted in this lawsuit under Texas law.

As the court addressed above, the Motion to Enforce is Defendant's second motion seeking enforcement of this Settlement Agreement. It filed the first Motion to Enforce Settlement (Doc. 9) on March 21, 2022, to which Plaintiffs responded (Doc. 11), and the following August, it filed the second Motion. In light of the second-filed motion, the court dismissed the first motion as moot. *See* Doc. 17. Plaintiffs did not file a response to the later Motion, either within the 21 days after the Motion was filed, as permitted by the Local Rules, or after the court's order mooting the first Motion. Therefore, the court will consider the second Motion without the benefit of a response from Plaintiffs.[2]

### A.   Law Applicable to Enforcement of Settlement Agreements

A "district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). That one party to a suit initially agrees to a settlement but later refuses to execute a formal agreement that recites the terms of the settlement does not preclude a district court from exercising such discretion to enforce a settlement agreement. *See, e.g.*, *Daftary v. Metropolitan Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam). Further, the issue of

---

[2] In their Response to Defendant's first Motion to Enforce Settlement, Plaintiffs assert that the parties' Settlement Agreement fails for lack of a material term. Doc. 11 at 1. Specifically, Plaintiffs argue that they "only agreed to resolve [this action] based on 'new money,' which necessarily did not include the withheld depreciation . . . ." *Id*. The court finds that Plaintiffs' later rejection of the agreement because there was no additional new money for "recoverable depreciation" is refuted on the face of the agreement terms, which specifies that the settlement amount includes compensation for depreciation. *See* Doc. 14 at 11. Plaintiffs do not acknowledge this specific verbiage, and therefore have not convinced the court that the agreement for new money did not contemplate and include an amount for recoverable depreciation. For this reason, even if the court considered Plaintiffs' response, the court's ruling here is unchanged.

**Memorandum Opinion and Order – Page 13**

whether such withdrawal by one party is allowed under Texas law is irrelevant to whether a settlement is enforceable. *Cavallini*, 44 F.3d at 268. Unless the party seeking to withdraw can demonstrate that the agreement is invalid under state law at the time it was made or differs materially from any judgment entered enforcing the agreement, "a federal court may hold them to their word by incorporating the terms of their agreement into a final judgment." *Id.*

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements [in cases that do not involve federal claims] is governed by the principles of state law applicable to contracts generally[.]" *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini*, 44 F.3d at 266 (citations omitted). Texas law and the Texas Rule of Civil Procedure 11 apply to settlement agreements, and, therefore, apply here to the question of whether the parties' settlement agreement is enforceable against Plaintiffs. *See id.* ("We apply Texas law to the enforcement of settlement agreements in Texas diversity cases, . . . and it is undisputed that Texas Rule of Civil Procedure 11 controls.").

Rule 11 provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or* unless it be made in open court and entered of record." Tex. R. Civ. P. 11 (emphasis added); *see also Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000) (setting forth Rule 11 requirements). "Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits." *Cavallini*, 44 F.3d at 266 (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984)). The rule "contemplates that something *more*

**Memorandum Opinion and Order – Page 14**

is required for the enforcement of such an agreement than that it be a valid contract. That something more is its reduction to writing and signature, or their substantial equivalents." *Id*. (emphasis in original).

The purpose of Rule 11 is to forestall the "misunderstandings and controversies" that often attend oral agreements between counsel. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citation omitted). Because no settlement in this case was made in open court, the parties' agreement had to be "in writing, signed and filed with the papers as part of the record" to be enforceable under Rule 11. Tex. R. Civ. P. 11; *Estate of Martineau*, 203 F.3d at 910. "[S]lavish adherence to the literal language of the rule," however, is not necessary. *Kennedy*, 682 S.W.2d at 529 (identifying various exceptions to Rule 11) (citation and internal quotation marks omitted).

**B.     Discussion**

The court determines that the e-mails exchanged by the parties' attorneys on January 21, 2022, gave rise to a binding Settlement Agreement under Rule 11. It is clear from these e-mails that agreement was reached as to all material terms that were contingent on the occurrence of other events, notwithstanding Plaintiffs' later attempts to withdraw from the agreement for a purported lack of additional compensation for recoverable depreciation. Doc. 14 at 3-4.

   1.     <u>The Agreement to Mutually Release All Claims Is in Writing, Contains All Essential Elements, and Is Not Contingent on Any Other Matter.</u>

A series of e-mails such as those exchanged by the parties' counsel in this case has been held to satisfy Rule 11's "in writing" requirement. *Green v. Midland Mortg. Co*., 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 708-09 (N.D. Tex. 2013) (predicting that the Texas Supreme Court

Memorandum Opinion and Order – Page 15

would hold that a series of e-mails satisfies Rule 11's "in writing" requirement, including e-mails exchanged by agents or attorneys of the parties) (citations omitted).

Moreover, the series of e-mails in this case is "complete within itself in every material detail" and "contains all of the essential elements of the agreement." *Padilla*, 907 S.W.2d at 460. Specifically, counsels' e-mails establish that Plaintiffs agreed to dismiss with prejudice all claims against Defendants in this action in exchange for a specific amount. Doc. 14 at 6. The parties negotiated that the specific amount was "new money," that is, the settlement payment was in addition to the payments State Farm already made as part of the claim adjustment. *Id*. The e-mails confirm that the new money includes all damages and costs incurred, including attorney's fees, court costs, and expenses. *Id.* at 11. Importantly, the new money included "any amounts of **recoverable depreciation** that may or may not be outstanding." *Id*. (emphasis added). Nothing in their e-mail exchange finalizing the payment mechanics suggests that either party considered the terms to be incomplete. *See id*. at 14-21.

Further, as contemplated in writing, the parties filed a joint notice of settlement with the court, reflecting the intent to dismiss this action pursuant to their agreement. *See* Doc. 7. Plaintiffs' *promise* to dismiss with prejudice all claims against Defendants was made in exchange for Defendants' *promise* to pay the agreed settlement amount. Doc. 14 at 18 ("[Plaintiffs] are in agreement to settle Kirby v. State Farm Lloyds for [] new money. [Plaintiffs' counsel] will start working on the draft of the settlement agreement and . . . a notice of settlement to the court . . . ."). These mutual promises and the mutual release language in the agreement show that the parties intended to fully and finally resolve all claims between them. As a result, Plaintiffs cannot avoid enforcement of the parties' Settlement Agreement.

    2.  <u>The Agreement Is Signed.</u>

 As to Rule 11's requirement that a writing be signed, the court in *Williamson v. Bank of New York Mellon* determined that a name or e-mail address in the "from" field was sufficient to satisfy the signature requirement under Texas law because the "from" field functions to identify the sender of the e-mail and authenticate the e-mail. 947 F. Supp. 2d 704, 708-09 (N.D. Tex. 2013) (citing *Khoury v. Tomlinson*, 518 S.W.3d 568, 576 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). Accordingly, because the "from" field functions to identify the sender of the e-mail and authenticate the e-mail, the court determines that the e-mail agreement between the parties was signed by their counsel and satisfies Rule 11's signature requirement. *See id*.; *see also Green*, 342 S.W.3d at 691 (concluding that an attorney may execute an enforceable Rule 11 agreement on a client's behalf).

    3.  <u>The Agreement Was Filed with the Court and Is Part of the Record.</u>

 In support of its Motion to enforce the parties' Settlement Agreement, Defendants filed the parties' e-mail exchange. The court, therefore, determines that the parties' agreement as contained in this exchange is now part of the record in this case, as both federal and state courts in Texas have enforced agreements filed contemporaneously with motions seeking their enforcement. *See, e.g.*, *Oliver v. Kroger Co.*, 872 F. Supp. 1545, 1549 (N.D. Tex. 1994); *Padilla*, 907 S.W.2d at 461. That Defendants filed the agreement despite Plaintiffs' opposition and the parties' dispute regarding the effect of the agreement's terms does not detract from such filing for purposes of Rule 11. *See Padilla*, 907 S.W.2d at 461. Thus, the agreement meets the third and final requirement of Rule 11.

**Memorandum Opinion and Order – Page 17**

Accordingly, as the parties' agreement meets every requirement under Rule 11, the court **finds** the Settlement Agreement is an enforceable contract, and therefore **grants** Defendant's Motion to Enforce Settlement Agreement (Doc. 14).

### III.     Conclusion

For the reasons explained, the court determines that it has diversity jurisdiction over this action, and accordingly, **denies** Plaintiffs' Motion to Remand (Doc. 10). The court further determines that the claims at issue in this action were settled on January 21, 2022, pursuant to a valid, binding, enforceable Rule 11 Settlement Agreement in which the parties mutually agreed to dismiss with prejudice all claims between them in this action. The court, therefore, **grants** Defendant State Farm's Motion to Enforce Settlement (Doc. 14), and **dismisses with prejudice** all claims asserted between Plaintiffs and Defendants in this action. Defendants are **ordered** to render payment as agreed by the parties pursuant to the terms of their Settlement Agreement, if payment has not yet already been made. Pursuant to Federal Rule of Civil Procedure 58, a corresponding final judgment will be entered by separate document.

**It is so ordered** this 21st day of March, 2023.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge